**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-cv-21426-BLOOM/DAMIAN

DORYS L. ACOSTA,

      Plaintiff,

v.

MARTIN J. O'MALLEY,
Commissioner of Social Security,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 11 & 13]**

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment, filed July 19 and August 16, 2023. [ECF Nos. 11 & 13]. Plaintiff, Dorys L. Acosta ("Plaintiff" or "Ms. Acosta"), seeks reversal and remand of the decision of the Commissioner of the Social Security Administration (the "Commissioner")[1] denying her claim for a period of disability and disability insurance benefits (the "DIB") [ECF No. 11], and the Commissioner requests that the Court affirm the decision [ECF No. 13]. This matter was referred to the undersigned by the Honorable Beth Bloom, United States District Judge, for a Report and Recommendation [ECF No. 15]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' memoranda [ECF Nos. 11 & 13], the administrative record [ECF No. 9], the pertinent portions of this Court's record, and all

---

[1] On December 20, 2023, Martin J. O'Malley was appointed Commissioner of the Social Security Administration and is automatically substituted as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

relevant authorities and is otherwise fully advised in the premises. For the reasons set forth below, the undersigned recommends the Court deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment [ECF No. 13], and affirm the decision of the Commissioner.

## I.     BACKGROUND

### A.  Ms. Acosta's Claim For Benefits

Ms. Acosta sought disability benefits following a tragic incident on January 16, 2016, in which she was stabbed in the neck and chest. Ms. Acosta alleges disability beginning on January 17, 2016, due to status post stab wound to the chest, type II diabetes mellitus without complications, hypertension, major depressive disorder, and posttraumatic stress disorder. (R. 1331–34, 1083). Ms. Acosta was 26 years old on her alleged disability onset date, such that she falls within the definition of a younger individual (age 18–49). (R. 1089); *see also* 20 C.F.R. § 416.963. Ms. Acosta has a high school education and past work experience as a fast-food worker, hand packager, ticketer or tagger, metal products fabricator, and warehouse worker. (R. 1088–89).

### B.  Ms. Acosta's Testimony Regarding Her Disabilities

Ms. Acosta, who was represented by counsel, initially appeared before an Administrative Law Judge ("ALJ") on June 8, 2018 (the "Initial Hearing"). (R. 171). Following the Initial Hearing, the ALJ issued a partially favorable decision on November 29, 2018, finding that Ms. Acosta was disabled from January 17, 2016, following the stabbing incident, through August 17, 2017. (R. 150 (the "Initial Decision")). However, the ALJ determined that she was not disabled beginning August 17, 2017. *Id.* Ms. Acosta challenged the Initial Decision and, ultimately, filed an action against the Commissioner in this Court. *See generally Acosta v. Berryhill*, No. 1:19-CV-23448 (Williams, J.) (S.D. Fla. Aug. 16, 2019),

ECF No. 1. That case was voluntarily remanded by the Commissioner, and Ms. Acosta eventually found herself before the same ALJ at another hearing, held on July 5, 2022. (R. 1099 (the "Remand Hearing")).

To the extent Ms. Acosta's testimony during the Initial Hearing is relevant to the instant action and concerns or describes her disabilities, the undersigned recounts that testimony herein. With the assistance of a Spanish interpreter, Ms. Acosta testified at the Initial Hearing that she feels pain in her chest and that she experienced a lack of breath on a daily basis as a result of one of her lungs having been punctured. (R. 186–87). She also testified that she experiences arrhythmia when she works and heart palpitations when she walks for more than one block and that she is unable to lift a gallon of milk without feeling a sharp pain in her chest and arm. (R. 188-189).

According to Ms. Acosta, she cannot remain in a fixed position because she becomes "stressed out and . . . hysterical." (R. 188). She testified that she lives in a state of paranoia, spaces out for hours, has trouble getting out of bed, and exhibits overall restlessness. (R. 189–191). Ms. Acosta further testified that she has a minor child whom she cares for and has no social life and that her mother does the household chores, cooking, and cleaning. (R. 191). During the July 5, 2022, Remand Hearing, Ms. Acosta testified that she is no longer the same and does not leave her house. (R. 1118).

As for her past relevant employment, as stated above, Ms. Acosta previously worked as a fast-food worker, hand packager, ticketer or tagger, metal products fabricator, and warehouse worker. (R. 1088–89).

### C. Expert Opinions And Relevant Medical Evidence Regarding Ms. Acosta

The record contains treatment notes from numerous doctors and other professionals regarding Ms. Acosta's condition. Below is a non-exhaustive summary of the relevant medical

evidence and expert opinions regarding Ms. Acosta's impairments, as well as the opinion of the impartial vocational expert ("VE").

### 1. *Relevant Medical Evidence And Expert Opinions Regarding Her Impairments*

Ms. Acosta was admitted and treated at Jackson Memorial Hospital ("Jackson Memorial") on January 17, 2016, through January 26, 2016. (R. 658). The treatment notes from that time state that Ms. Acosta suffered a stab wound to the left side of her neck on January 17, 2016. *Id.* She underwent median sternotomy, exploratory thoracotomy, repair of right grade 1 pulmonary laceration, ligation of intercostal vessel, and pericardial exploration. (R. 665, 1036). Ms. Acosta reported physical symptoms of chest pain and shortness of breath aggravated by exertion and changes in the weather. (R. 1526, 1558).

Treatment notes from August 17, 2017, show that Ms. Acosta complained of chest wall pain. (R. 954, 959, 967, & 970). During follow up visits in August 2017 and October 2017, Ms. Acosta reported minimal chest pain after receiving an injection of anesthetic (R. 973), and, by January 22, 2018, Ms. Acosta stated she felt "70 percent" better from the injections. (R. 962). Notes on Ms. Acosta's review of systems between June 2017 through February 2018 demonstrated no musculoskeletal, cardiovascular, neurological, or psychological symptoms. *See generally* R. 878–910.

On March 19, 2018, Ruben Gonzalez, M.D., instructed Ms. Acosta to not bend at the waist and avoid lifting more than 15 pounds. (R. 957 & 963). By May 28, 2018, however, Dr. Gonzalez instructed Ms. Acosta to resume normal activities. (R. at 963). Ms. Acosta was seen several times by Dr. Gonzalez, who observed her to be depressed and anxious. *See, e.g.*, R. 485, 578. Although Ms. Acosta indicated in August 2016 that she was living with a new partner in a supportive relationship (*see, e.g.*, R. 749), she reported difficulties in her day-to-

day life due to the depression and stated she experienced distressing memories, nightmares, and insomnia since her stabbing. (R. 1038).

Ms. Acosta was also treated by Dr. Patricia Ares Romero at Jackson Memorial. On October 3, 2016, Dr. Ares-Romero opined that Ms. Acosta exhibited "extreme" limitations in all functional domains. (R. 479). However, subsequent clinical notes from other treaters report that mental status examinations generally documented that Ms. Acosta was alert, fully oriented, well-groomed with adequate hygiene, cooperative behavior, and normal speech. Her mental status examinations were largely benign. *See generally* R. 1810–80. Ms. Acosta denied hallucinations and demonstrated relevant and appropriate thought content, normal memory and fund of knowledge. (R. at 651, 655–57, 687, 689–90, 692–93, 695–96, 699, 704, 708, 712, 714, 717–18, 725, 728–29, 732, 735–36, 738, 744–45, 747–48, 752, 754–55, 757–58, 762, 764–65, 767–68, 772, 781, 783, 789, 791–92, 795, 797, 801, 803, 806–07).

### 2. *Vocational Expert Testimony*

At the Remand Hearing before the ALJ, Stephanie Barnes, an impartial VE, testified that a person with Ms. Acosta's same age, education, work experience, and residual functional capacity ("RFC") was unable to perform any of her past work as a fast-food worker, hand packager, ticketer/tagger, metal products fabricator, or warehouse worker. (R. 1130). When asked whether other jobs exist in significant numbers in the national economy for a person with Ms. Acosta's age, education, work experience, and RFC, the VE provided three representative occupations such a person could perform: photocopy machine operator,[2]

---

[2] During the Remand Hearing, the VE referred to the first job as "photocopy or scanning machine operator," while, in her Decision, the ALJ listed the position as "photocopy or canning machine operator." (R. 1131, 1090). Because the DOT refers to the position simply as "photocopy machine operator," the undersigned uses that designation herein.

produce sorter, and private industry mail sorter. (R. 1130–1131). The VE testified that there were 107,000, 109,000, and 142,000 jobs in the national economy in each of these respective occupations. *Id.* Notably, Counsel for Ms. Acosta did not object to any part of the VE's testimony, including testimony about job numbers, nor did he challenge or question the foundation for the VE's testimony.

## II.     PROCEDURAL HISTORY

### A. *Ms. Acosta's Initial Challenge*

Ms. Acosta initially applied for DIB benefits on January 29, 2016, alleging an onset date of January 17, 2016. (R. 1331–34). As stated above, her application was denied as to the period beginning August 17, 2017, at both the initial and reconsideration levels. (R. 209–23, 225–39). At the Initial Hearing, Ms. Acosta and a VE testified. *See* R. 172. The VE testified that a person with Ms. Acosta's same age, education, work experience, and RFC was unable to perform any of her past work. (R. 204). When asked whether other jobs exist in significant numbers in the national economy for a person with Ms. Acosta's age, education, work experience, and RFC, the VE provided three representative occupations such a person could perform: table worker, touch up inspector, and surveillance systems monitor. *Id.* The VE testified that there were 29,000, 1,300, and 9,200 jobs in the national economy in each of these respective occupations. *Id.* Counsel for Ms. Acosta did not object to or challenge the VE's testimony, but he questioned the VE using altered hypotheticals concerning whether jobs existed that Ms. Acosta could perform. *See* R. 204–07.

Following the Initial Hearing, the ALJ rendered a partially favorable decision on November 28, 2018. (R. 140). In the Initial Decision, the ALJ found that Ms. Acosta was disabled from January 17, 2016, through August 17, 2017 (the "Period of Disability"), but

that she was not disabled after August 17, 2017. (R. 165). Specifically, the ALJ concluded that: (1) Ms. Acosta had not engaged in substantial gainful activity since January 16, 2016 (R. 153); (2) her severe impairments were status post stab wound, type II diabetes mellitus without complications, hypertension, major depressive disorder, and posttraumatic stress disorder (*id.*); (3) during the Period of Disability, Ms. Acosta did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404 (R. 161–64); (4) beginning on August 17, 2017, and onward, Ms. Acosta had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(b), given that she had exhibited medical improvement, but that she could not perform her past relevant work (R. 161–64); and (5) after the Period of Disability, jobs existed in significant numbers in the national economy that Ms. Acosta could perform, *i.e.*, a table worker, a touch up inspector, and a surveillance systems monitor (R. at 165).

After her appeal of the Initial Decision to the Appeals Council was denied, Ms. Acosta filed an action against the Commissioner in this District, in which she argued that the Appeals Council had abused its discretion in declining to admit evidence and that the ALJ's RFC finding was not supported by substantial evidence where the ALJ purportedly did not take into account all of Ms. Acosta's limitations from her impairments and relied on VE testimony that contained apparent conflicts. *See generally Plaintiff's Motion for Summary Judgment*, No. 1:19-CV-23448 (S.D. Fla. Apr. 15, 2021), ECF No. 15. The Commissioner filed an Unopposed Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) with Remand to Defendant (the "Motion for Remand"), requesting the District Court remand the case so that the ALJ could re-evaluate the evidence of record. *Defendant's Unopposed Motion for Entry of Judgment*, No. 1:19-CV-23448 (S.D. Fla. Apr. 15, 2021), ECF No. 19. The District

Court entered an Order that adopted the relief requested by the Commissioner in his Motion for Remand, directing the ALJ to:

> further evaluate [Ms. Acosta's] claim at step five, and in so doing, seek supplemental vocational expert evidence on other work in the national economy which [Ms. Acosta] could perform; identify and reconcile any inconsistencies between the vocational evidence and the Dictionary of Occupational Titles; discuss any inconsistencies with the decision and if necessary, make specific factual findings on whether the job numbers provided constitute significant numbers in the national economy. The [ALJ] will also be directed to take any further action to complete the administrative record; offer [Ms. Acosta] the opportunity for a hearing; and issue a new decision.

(R. 1141 (the "Remand Order")).

### B. The Remand Proceedings

Following remand, Ms. Acosta appeared before the same ALJ on July 5, 2022, for the Remand Hearing. (R. 1099). Once again, only Ms. Acosta and a VE testified, but a different VE appeared than from the Initial Hearing. *See* R. 1099. At the commencement of the Hearing, the ALJ acknowledged that the case was before her on remand from the District Court and that she was apprised of the instructions set out in the Remand Order. *See* R. 1107–08. As discussed above, the VE testified that Ms. Acosta could not perform any of her past work, given her RFC, but that the positions of photocopy machine operator, produce sorter, and private industry mail sorter were jobs that Ms. Acosta could perform that exist in significant numbers in the national economy. (R. 1130–1131).

The ALJ further questioned the VE to clarify how the identified jobs classified as "Light Work" under 20 C.F.R. §404.1567,[3] given the ALJ's determination that Ms. Acosta

---

[3] Section 404.1567(b) defines "Light Work" as work that:

> [I]nvolves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of

was limited to lifting, carrying, pushing, and pulling 15 pounds occasionally and less than 10 pounds frequently. (R. 1131). The VE explained that the determining factor in considering whether a job fell into the "Light Work" category was if the job required standing more than two hours out of an eight-hour workday, effectively removing the job from the "Sedentary Work" category. (R. 1132). The VE testified that "the lifting of 15 pounds and less than 10 [pounds] on a frequent basis, would not be outside of the ability to perform the job." *Id.* The ALJ also sought further clarification as to how the occupations can be considered "Light Work" given Ms. Acosta's limitation that she could occasionally reach overhead with her right dominant upper extremity. *Id.* The VE testified that the DOT did not address the direction of reaching overhead or unilateral versus bilateral upper extremity limitations, and further observed that Ms. Acosta would have one non-impacted extremity—her left arm. *Id.* Therefore, according to the VE, the given limitations were consistent with the physical exertions of the identified jobs. Lastly, the ALJ asked the VE whether there would be any reduction in the number of jobs in the national economy as to the positions identified. (R. 1133). The VE indicated that there would be no reductions. *Id.*

Once again, Ms. Acosta's counsel questioned the VE using altered hypotheticals as to the occupations that exist that Ms. Acosta could perform (R. 1134–37), but, notably, counsel did not object to any part of the VE's testimony, including testimony about job numbers or the physical and mental exertions required for those jobs, nor did he challenge or question the foundation for the VE's testimony.

---

walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

On August 31, 2022, the ALJ issued the decision now before this Court. (R. 1090 (the "Decision")). The ALJ determined that Ms. Acosta has not been under a disability under Sections 216(i) and 223(d) of the Social Security Act from January 17, 2016, through December 31, 2020, the date last insured. (R. 1090 (the "Decision")). As she did on record during the Remand Hearing, in her Decision, the ALJ noted the procedural posture of the case and included verbatim the instructions set out by the District Court in its Remand Order. (R. 1075–76). The ALJ considered the supplemental vocational expert evidence on the other work in the national economy that Ms. Acosta could perform by recounting the VE's testimony as to the photocopy machine operator, produce sorter, and private industry mail sorter jobs available in the national economy. *See* R. 1089–90. The ALJ further explained the inconsistencies she identified between the vocational evidence and the DOT, expressly stating that, pursuant to SSR 00-4p, she "determined that the [VE's] testimony is consistent with the information contained in the [DOT][,] except with regard to the limitation [of] lifting, carrying, pushing, and pulling 15 pounds occasionally and less than 10 pounds frequently" and with regard to "the limitation [of] reaching overhead with the right dominant upper extremity." (R. 1090). The ALJ reconciled the inconsistencies by noting that the VE testified that the carrying and pulling limitations would not be outside of the DOT's definition of "Light Work" and that the DOT did not differentiate between the direction of reaching or bilateral or unilateral reaching. *Id.* Rather, the ALJ observed that according to the VE, the DOT requires an expert to look at the total function of the job beyond the DOT and, in light of Ms. Acosta having no limitation with respect to her non-dominant extremity, the above jobs would fall within Ms. Acosta's physical limitations. *Id.*

The ALJ undertook no specific factual findings on whether the job numbers provided by the VE constituted significant numbers in the national economy. Instead, the ALJ concluded that there were occupations that existed in significant numbers in the national economy that Ms. Acosta could perform by relying solely on the VE's testimony that there were 107,000, 109,000, and 142,000 jobs in the national economy for the three identified occupations. (R. 1089–90).

Ms. Acosta requested review of the ALJ's Decision, and on March 27, 2023, the Appeals Council denied her request for review (R. 1063–66), rendering the ALJ's Decision as the Social Security Commissioner's "final" determination. *Id.*; *see also* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Having exhausted her administrative remedies, on April 14, 2023, Ms. Acosta filed the instant action seeking review of the Decision [ECF No. 1]. *See* 42 U.S.C. § 405(g). Thereafter, Ms. Acosta filed a Motion for Summary Judgment on July 19, 2023. [ECF No. 11 ("Motion")]. The Commissioner filed a Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment on August 16, 2023. [ECF No. 13 ("Response")]. Ms. Acosta did not file a Reply in support of her Motion nor a response to the Commissioner's Cross Motion.

Both parties' Motions are ripe for adjudication.

### III.   APPLICABLE LEGAL STANDARD

Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1328c(a)(1)-(2). A claimant is disabled if she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C §§ 423(d)(1)(A), 1382c(a)(3)(A); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317

(11th Cir. 2021). A plaintiff bears the burden of proving she is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c).

Here, the ALJ concluded that Ms. Acosta is not disabled under Sections 216(i) and 223(d) of the Social Security Act based on the five-step process that must be applied to determine whether a claimant is disabled. (R. 1090). *See* 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

At step one of this process, the ALJ must determine whether the claimant is unable to engage in substantial gainful activity ("SGA"). *Id.* SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574-75, 416.974-5. If a claimant can engage in SGA, the ALJ will find that she is not disabled for that period of time. 20 C.F.R. §§ 404.1571, 416.971.

At step two, the ALJ must determine whether the claimant has a severe medically determinable mental or physical impairment ("MDI") or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. *Id.* If the claimant does not have an MDI or combination of impairments that is severe, she is not considered disabled. *Id.*

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525-26; *see also* §§ 416.920(d), 416.925-26. If so, the claimant is disabled. *Id.* If not, the

analysis proceeds to the next step. *Id*. Before considering step four, however, the ALJ must first determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ must make this determination while stating "with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant can perform her past relevant work, in light of her RFC. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work, work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability, must be established. 20 C.F.R. §§ 404.1560, 416.960. If the claimant has the RFC to do her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is unable to do any of her past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant can do other work, she is not disabled. *Id*. If she is unable to do other work, she is disabled. *Id*. At step five, the burden temporarily shifts to the Commissioner to show the existence of other jobs in the national economy that exist in significant numbers that the claimant can perform, given her impairments. 20 C.F.R. §§ 404.1512, 404.1560(c), 416.912, and 416.960(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles ("DOT") and testimony from an impartial vocational expert. *See Buckwalter*, 5 F.4th at 1321.

## IV.     THE ALJ'S FINDINGS

Applying the foregoing process to Ms. Acosta's claim for benefits, the ALJ found that: (1) Ms. Acosta did not engage in SGA from January 17, 2016, though December 31, 2020, her date last insured; (2) during the period she was not gainfully employed, her "status post stab wound to the chest (costochondritis); asthma; type II diabetes mellitus without complications, hypertension, major depressive disorder, [and] posttraumatic stress disorder (PTSD)" were severe impairments; and (3) her combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404. (R. 1078–79).

With regard to her RFC, the ALJ found that Ms. Acosta had the RFC to perform "Light Work" as defined in 20 C.F.R Section 404.1567(b), except that she can lift, carry, push, and pull 15 pounds occasionally and less than 10 pounds frequently; she can sit, stand, and/or walk with normal breaks for 6 hours in an 8-hour workday; she can occasionally reach overhead with the right dominant upper extremity and has no limitations with her left upper extremity; she should not work climbing ladders, ropes or scaffolds, she should not work at unprotected heights or operate dangerous machinery, she should avoid concentrated exposure to dust, odors, and gases, she should not work around heavy vibration or loud noise; she should avoid concentrated exposure to extreme cold; and she is unable to work in large settings, such as a retail mall. (R. 1082). The ALJ further found that Ms. Acosta retains the ability to understand, remember, and carry out short, simple tasks and instructions; she is able to sustain attention/concentration for 2-hour periods at a time and for 8 hours in the workday on short simple tasks and instructions; she is able to respond appropriately to interaction with co-workers and the general public; she can deal with changes in a routine work setting and have only occasional interaction with the public on routine matters; she can respond

14

appropriately to work pressures in a usual unskilled work setting; and she can maintain regular attendance and be punctual with customary tolerances and perform activities within a schedule. *Id.* As such, according to the ALJ, (4) Ms. Acosta was unable to perform her past relevant work, but (5) she can perform other jobs that exist in significant numbers in the national economy. (R. 1089–1090).

Therefore, the ALJ determined that Ms. Acosta was not disabled under Sections 216(i) and 223(d) of the Social Security Act. *Id.*

## V.   ISSUES RAISED IN THE PARTIES' MOTIONS

In her Motion for Summary Judgment, Ms. Acosta argues that the Decision should be reversed because the VE's testimony does not constitute substantial evidence upon which the ALJ could properly rely. Mot. at 6. Specifically, she argues (1) the VE vastly overstated the number of full-time photocopy machine operator, produce sorter, and private industry mail sorter jobs in the national economy, and (2) there is an apparent conflict as to whether Ms. Acosta can perform the private industry mail sorter job because the reasoning level required for the position exceeds Ms. Acosta's RFC. *Id.* at 7–12. Ms. Acosta argues that these issues concerning the VE's testimony warrant reversal of the ALJ's Decision or, alternatively, remand with instructions for the ALJ to obtain testimony from a VE that provides "substantial evidence" for the ALJ's decision. *Id.* at 17.

In the Response and Cross-Motion for Summary Judgment, the Commissioner argues that the ALJ's Decision should be affirmed because Ms. Acosta fails to satisfy her burden of showing she was disabled within the meaning of the Social Security Act. Resp. at 5. The Commissioner asserts that the relevant inquiry for this Court is not whether substantial evidence supports the VE's testimony but whether the VE's testimony constitutes substantial evidence supporting the ALJ's position. Resp. at 10. According to the Commissioner, the

VE's unchallenged and unobjected to testimony properly constituted substantial evidence upon which the ALJ could and did rely, Ms. Acosta has not demonstrated that the ALJ was required to independently verify the VE's testimony, and the Court should not consider challenges and information Ms. Acosta failed to raise during the hearing before the ALJ. *See* Resp. at 12–14. Further, the Commissioner argues that even if there was an apparent conflict with respect to the private industry mail sorter job, it would have no bearing on whether the Decision should be affirmed because a significant number of other jobs Ms. Acosta can perform, such as photocopy machine operator and produce sorter jobs, remain in the national economy. Resp. at 8.

## VI.    APPLICABLE STANDARDS FOR REVIEW OF THE ALJ'S DECISION

The Court's review of the ALJ's Decision is limited to determining whether the Decision is supported by substantial evidence and whether the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but less than a preponderance. *Id.* (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id.* A court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VII.   DISCUSSION

As discussed above, Ms. Acosta contends the ALJ's Decision is not supported by substantial evidence because the ALJ failed to identify issues with the VE's data and failed to identify the disparity between the VE's data and the Department of Labor's Occupational Employment and Wage Statistics ("OEWS") data, which, according to Ms. Acosta, reflects a significant disparity between the VE's testimony regarding available jobs and the OEWS data. Ms. Acosta argues that because of this, the Decision is not supported by substantial evidence and should be remanded. As also discussed above, she further challenges whether the private industry mail sorter job is appropriate for her given her limitations.

### A.   *Whether The Court May Consider Ms. Acosta's Evidence Regarding The Numbers of Photocopy Machine Operator, Produce Sorter, And Private Industry Mail Sorter Jobs In The National Economy.*

Initially, the Commissioner argues that this Court may not consider the evidence regarding job numbers presented by Ms. Acosta in support of her Motion for Summary Judgment because Ms. Acosta did not present the evidence to the ALJ and because she did not challenge or dispute the VE's data during the Remand Hearing.

During the Remand Hearing, the VE testified that there were approximately 107,000 full-time photocopy machine operator jobs, 109,000 full-time produce sorter jobs, and 142,000 private industry mail sorter jobs in the national economy, and the ALJ relied on and adopted these estimates in her Decision. (R. 1089–90). Importantly, as the Commissioner points out in the Response, the record reflects that counsel for Ms. Acosta did not object to the VE's testimony or job number estimates during the Remand Hearing.[4] However, on appeal to this

---

[4] Although, during the Initial Hearing, the VE there identified different occupations that Ms. Acosta could perform given her RFC, Ms. Acosta did not challenge the VE's testimony as to the number of those jobs available in the national economy, neither during the Hearing nor in the subsequent appeal.

Court, she now provides the Court with labor market data from the OEWS, which was not presented to the ALJ nor used to challenge the VE's testimony. Ms. Acosta argues that there is a vast disparity between the OEWS data and the job numbers offered by the VE.

For example, according to Ms. Acosta, the OEWS data shows that there are only 32,920 full-time and part-time jobs for the position of photocopy machine operator for the entire Standard Occupational Classification ("SOC") group. Mot. at 7. Ms. Acosta alleges this data is the only source for national jobs incidence data published by the federal government. *Id.* Ms. Acosta also posits an alternative method of calculating the number of jobs based on OEWS data (the "Equal Distribution Method"): dividing the total number of jobs in the SOC group by the number of individual DOT occupations in the SOC group. *Id.* at 7–8. According to Ms. Acosta, applying the Equal Distribution Method yields approximately 5,487 jobs in the national economy for the position of photocopy machine operator. *Id.* at 8.

Ms. Acosta avers that OEWS data shows 25,560 jobs in existence for the entire SOC group to which produce sorter belongs. *Id.* Under the Equal Distribution Method, that number only yields 2,130 jobs for the position. *Id.* Lastly, Ms. Acosta asserts that OEWS data shows 69,400 jobs for the entire SOC group to which private industry mail sorter belongs. *Id.* at 9. And, unsurprisingly, the alternative Equal Distribution Method yields only 4,957 jobs. *Id.*

Ms. Acosta argues that these statistics highlight the vast disparity between the VE's estimates of 107,000, 109,000, and 142,000 photocopy machine operator, produce sorter, and private industry mail sorter jobs, respectively, and the above estimates from the OEWS data

and the Equal Distribution Method. *Id*. And, Ms. Acosta maintains, such a vast disparity between the VE's testimony and the estimates from the OEWS data and the Equal Distribution Method indicates that the VE's testimony cannot constitute substantial evidence. *Id*. at 10–11.

Citing *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1319 (11th Cir. 2021), Ms. Acosta argues the ALJ should have investigated the disparity. Mot. at 14. In *Viverette*, the claimant challenged, on cross-examination, the VE's testimony regarding the number of jobs available nationally. 13 F.4th at 1319. The Eleventh Circuit found that remand was appropriate because there was evidence in the record that that the number of positions estimated by the VE may have been overstated and the ALJ failed to investigate the discrepancy. *Id*.

In a similar case, the Eleventh Circuit held that when an ALJ relies on a VE's testimony regarding the number of jobs available in the national economy that the claimant could perform, "that testimony cannot be both internally inconsistent and incomplete." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1285–86 (11th Cir. 2020). Ms. Acosta also cites SSR 00-4p for the proposition that the ALJ had a duty to resolve the disparity between the VE's job number estimates and those presented by Ms. Acosta. Mot. at 15–16.

The first issue the Court must examine is whether it should even consider the new data offered by Ms. Acosta with her Motion. The Commissioner argues that Ms. Acosta is foreclosed from now challenging the VE's testimony regarding the numbers of photocopy machine operator, produce sorter, and private industry mail sorter jobs in the national economy before this Court because she did not object to or challenge the VE's testimony regarding this data during the hearing. *See* Resp. at 14. The undersigned agrees.

In *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998), the Eleventh Circuit held that, on appeal from an ALJ's decision, courts only consider evidence that was actually presented to the ALJ to determine whether the ALJ's decision is supported by substantial evidence. The Eleventh Circuit has consistently held that it will not consider data on appeal from an ALJ's decision where the claimant did not object to the VE's testimony during the hearing. *See Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 675 (11th Cir. 2019); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020); *Bacon*, 861 F. App'x at 320. Likewise, here, the undersigned finds that this Court should not consider the evidence presented by Ms. Acosta in support of her Motion regarding the OEWS data and the Equal Distribution Method because she did not present that evidence or raise any challenges based on it during the hearing before the ALJ.

### B. Whether The ALJ Was Required To Identify Problems With The VE's Data Or Investigate The Disparity Between That Data And The Data Now Presented By Ms. Acosta.

Ms. Acosta contends that the ALJ should have identified the significant disparity between the VE's job numbers data and the data she now cites, or, at a minimum, should have investigated the inconsistency. As such, Ms. Acosta argues remand is warranted so that the ALJ can do so. In support, she cites the *Viverette* decision discussed above, as well as SSR 00-4p. *Viverette* and the SSR do not apply under the circumstances presented here.

Although the Eleventh Circuit remanded in *Viverette* based on the ALJ's failure to investigate discrepancies and issues with the VE's job data, in that case, unlike the present, the claimant objected to the VE's testimony and raised challenges to the VE's methodology

and data on cross-examination. 13 F.4th at 1319.[5] Because Ms. Acosta failed to object or raise any challenge to the VE's testimony in this case, her reliance on the *Viverette* decision is misplaced.

The undersigned is also not persuaded by Ms. Acosta's reliance on SSR 00-4p. Pursuant to SSR 00-4p, the ALJ has an affirmative duty to identify and resolve apparent conflicts between the DOT, which includes information about jobs classified by their exertional and skill requirements that exist in the national economy, and a VE's testimony. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *Washington*, 906 F.3d at 1362. However, this affirmative duty to resolve conflicts does not extend to other sources outside the DOT. *See id*. As set forth above, the SSR 004-p only requires the ALJ to identify and resolve apparent conflicts between the DOT and the VE's testimony. This provision does not require the ALJ to inquire *sua sponte* into the foundation for the VE's testimony concerning the number of relevant jobs in the national economy. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017). Nor does Ms. Acosta point to any case, regulation, or statute suggesting that the ALJ must *sua sponte* take administrative notice of economic data when the claimant did not raise an issue with job numbers during the hearing.

The Eleventh Circuit has expressly reaffirmed this notion, reiterating that an ALJ is required to independently verify a VE's testimony only "when there is a conflict between the VE's testimony and the DOT." *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir.

---

[5] Likewise, in *Goode*, equally applicable here, the Eleventh Circuit pointed out remand was warranted to address the ALJ's failure to investigate the VE's testimony because that was "not a case in which the claimant failed to challenge or question the [VE's] methodology or job numbers." 966 F.3d at 1284 n.3. Rather, the record in *Goode* showed that the claimant there made several attempts during her hearing to question the VE about his flawed testimony and credibility, but the ALJ cut the claimant's questioning short by urging her to "move on." *Id*.

2019). Ms. Acosta alleges for the first time before this Court that the "conflict [here] is between the number of available jobs the VE reported and the number of available jobs shown in the figures provided by the Bureau of Labor Statistics through its publication of the [OEWS]." *Id.* at 556. However, as explained in *Webster*: "Unlike the situation in which the VE's testimony conflicts with the DOT, this Court has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the [OEWS]." *Id.*; *see also Leija v. Colvin*, Case No.: 1:13-cv-1575GSA, 2015 WL 1439933, *5 (E.D. Cal. Mar. 26, 2015) (observing that the SOC job classification system, which is used by the OEWS, is different from the DOT's classification system and, therefore, challenges to a VE's testimony regarding the availability of jobs for each DOT category is problematic when it relies on statistics gleaned from the OEWS different classification system.). And, notably, "the figures in the [OEWS] are not part of the SSA's regulatory scheme." *Webster*, 773 F. App'x at 556 (citing 20 C.F.R. § 404.1566(d)(1), (5)).

Accordingly, there was no requirement that the ALJ here independently investigate and resolve conflicts between the VE's testimony concerning job numbers and the job numbers presented by the OEWS. As such, remand is not warranted based on the ALJ's failure to identify or investigate issues with the VE's job data.

**C.  *Whether The ALJ's Decision That Jobs That Ms. Acosta Can Perform Exist In The National Economy Is Supported By Substantial Evidence.***

The ALJ determined that Ms. Acosta has not been disabled, as defined in the Social Security Act, from January 17, 2016, through December 31, 2020, because there are jobs that exist in significant numbers in the national economy that Ms. Acosta is capable of performing.

(R. 1090). In making this determination, the ALJ relied on the VE's testimony. (R. 1089–90, 1131–32).

The VE testified that jobs exist in significant numbers in the national economy that Ms. Acosta can perform, such as photocopy machine operator, produce sorter, and private industry mail sorter. *Id.* at 1131–32. With regard to the numbers of jobs available, the VE testified that there were approximately 107,000 full-time photocopy machine operator jobs, 109,000 full-time produce sorter jobs, and 142,000 private industry mail sorter jobs in the national economy, and the ALJ relied on and adopted these estimates in her Decision. *Id.* Ms. Acosta argues that the VE's testimony is not substantial evidence that the ALJ could rely on to support the Decision in light of the issues discussed above. For the reasons discussed above, the undersigned finds that Ms. Acosta's challenges to the VE's testimony must fail.

Moreover, the ALJ properly relied on the VE's testimony in determining the jobs identified exist in significant numbers. Work exists in the national economy when it exists in significant numbers in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a). The ALJ, relying on a VE's testimony, is charged with determining whether a specific number of jobs constitutes a significant number. 20 C.F.R. § 404.1560(c); *see Phillips*, 357 F.3d at 1240. Here, as discussed above, Ms. Acosta did not challenge the VE's data or the bases for it, and she did not present any different evidence of jobs data for the ALJ to consider at the Hearing. Thus, the ALJ relied only on the evidence and testimony presented by the VE. (R. 1130–34).

In *Valdez*, the Eleventh Circuit found that the ALJ was entitled to rely on a VE's testimony about the number of jobs available in the national economy because the claimant did not object to the VE's testimony, did not question the VE's qualifications, and did not

present other occupational employment statistics to the ALJ (which also foreclosed the Eleventh Circuit's consideration of the data in the occupational employment statistics on appeal). 808 F. App'x at 1010. The circumstances presented here are similar to those in *Valdez*, and, like the court in *Valdez*, the undersigned finds that the ALJ was entitled to rely on the VE's testimony about the number of jobs available in the national economy given that Ms. Acosta presented no other evidence for the ALJ to consider and offered no reason for the ALJ to question the VE's evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019) (observing that if a claimant does not demand the underlying evidence supporting a VE's testimony, the VE's "testimony may count as substantial evidence even when unaccompanied by supporting data"); *see also Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401, 402–03 (11th Cir. 2012) (concluding "the ALJ was entitled to rely upon the VE's testimony without requiring the VE to provide a comprehensive statistical explanation of how he arrived at the reduced job number figures" where the "reduced estimate was based upon the VE's 'experience' and 'his personal knowledge of those jobs'"); *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 974–75 (11th Cir. 2012) (per curiam) (affirming ALJ's sole reliance on VE's testimony and noting that claimant neither offered any evidence controverting the VE's testimony nor objected to it); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795–96 (11th Cir. 2011) (per curiam) (affirming ALJ's reliance on the VE's testimony in part because claimant "did not object to the VE's testimony or qualifications, offer any evidence controverting the VE's testimony, or even question the VE").

As such, Ms. Acosta has not established that the ALJ erred when she considered only the VE's job estimates as substantial evidence because that is the only evidence regarding the

number of jobs available in the record. *See Viverrette*, 13 F.4th at 1318; *Valdez*, 808 F. App'x at 1010.[6]

Thus, the undersigned finds that the ALJ properly relied on the VE's testimony, and, under the circumstances, the VE's testimony concerning whether there are significant jobs in the national economy that Ms. Acosta can perform is substantial evidence that supports the ALJ's Decision.

**D.  *Whether An Apparent Conflict Exists As To The Mail Sorter Job***

Ms. Acosta argues that the VE's testimony does not constitute substantial evidence supporting the ALJ's decision because there is an apparent conflict regarding the private industry mail sorter job the VE identified as a job Ms. Acosta can perform and whether Ms. Acosta is capable of performing that work. Specifically, Ms. Acosta argues that the position of mail clerk requires a reasoning level that exceeds Ms. Acosta's RFC.

In Response, the Commissioner argues that this Court should affirm the ALJ's decision because even if the private industry mail sorter occupation was eliminated due to an apparent conflict, 216,000 of the 358,000 identified jobs remain, which, in any event, constitutes substantial evidence upon which the ALJ properly relied. Resp. 8. In other words,

---

[6] This notwithstanding, under Eleventh Circuit precedent, even the numbers produced by the OEWS and Ms. Acosta's Equal Distribution Method would likely satisfy the Commissioner's burden of identifying a significant number of jobs in the national economy. *See, e.g.*, *Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (affirming decision where "ALJ's finding that 840 polisher, document preparer, and bonder jobs constituted a significant number in the national economy"); *Allen v. Bowen*, 816 F.2d 600, 602 (11th 1987) (finding appliance repair job with 174 positions available where claimant resided, 1,600 positions available in claimant's state, and 80,000 positions available nationally significant); *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 935 (11th Cir. 2015) (concluding 23,800 jobs nationally significant). Therefore, any purported error by the ALJ in not using OEWS data would have been rendered harmless. *See Valdez*, 808 F. App'x at 1009.

any purported error from including the private industry mail sorter job numbers in the VE's testimony was harmless. The Court agrees.

An ALJ's errors may be harmless if they do not prejudice the claimant. *See Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) (holding that ALJ's failure to include claimant's driving limitation in hypothetical posed to VE was harmless because the jobs identified by the expert in response did not appear to involve driving). For example, in *Valdez*, the Eleventh Circuit affirmed an ALJ's decision where, despite alleging that an occupation's reasoning level conflicted with his RFC, the claimant failed to argue the remaining identified occupations were inconsistent with his RFC. 808 F. App'x at 1009. The court reasoned that "any error pertaining to the ALJ's conclusion that [the claimant] could work as an order clerk is harmless because there are other jobs he is qualified to do even in light of his [RFC], age, education, and work experience." *Id.*

In *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671 (11th Cir. 2019), the Eleventh Circuit held that an ALJ's error, if any, in failing to identify a conflict between the claimant's RFC and the reasoning level required for the positions of surveillance systems monitor and document preparer was harmless. *Id.* at 674. The court reasoned the ALJ had also concluded that the claimant could perform the position of final assembler, which the claimant had not alleged was inconsistent with her RFC. *Id.*

Like the cases discussed above, the undersigned finds that any potential error in the ALJ's step five analysis is harmless, as it would not affect the outcome of Ms. Acosta's case. *See Jones*, 492 F. App'x at 73; *see also Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (affirming ALJ decision that included harmless factual errors). Specifically, even if the ALJ failed to resolve the apparent conflict regarding whether Ms. Acosta could perform the private

industry mail sorter job, 216,000 of the jobs identified by the VE remain. In light of the undersigned's conclusion above that it is foreclosed from considering Ms. Acosta's proposed job numbers, it follows that the remaining number of jobs available in the national economy are nonetheless significant and Ms. Acosta has not challenged her ability to perform the remaining occupations of photocopy machine operator and produce sorter. Ms. Acosta has not argued that the positions of photocopy machine operator or produce sorter are inconsistent with her RFC, and the ALJ's conclusion that those occupations exist in sufficient numbers was based on substantial evidence.

Accordingly, any error pertaining to the ALJ's conclusion that Ms. Acosta can work as a private industry mail sorter is harmless because there are other jobs she is qualified to do that exist in significant numbers in the national economy. *See Valdez*, 808 F. App'x at 1009; *Wooten*, 787 F. App'x at 674. It follows that the ALJ's Decision is supported by substantial evidence even if the private mail sorter job is removed as a basis for the Decision.

### E.  *Whether The ALJ Complied With The District Court's Remand Instructions*

Finally, the undersigned has considered the ALJ's Decision in light of the District Court's Remand instructions, discussed above. In *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989), the Supreme Court observed that "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." (citing *Hooper v. Heckler*, 752 F.2d 83, 88 (4th Cir. 1985); *Mefford v. Gardner*, 383 F.2d 748, 758–59 (6th Cir. 1967)). Mindful of this principle, the undersigned considers whether the ALJ complied with the District Court's instructions on remand as set out in its Remand Order. The Order directed the ALJ to:

> further evaluate [Ms. Acosta's] claim at step five, and in so doing, seek supplemental vocational expert evidence on other work in the national economy which [Ms. Acosta] could perform; identify and reconcile any

> inconsistencies between the vocational evidence and the Dictionary of Occupational Titles; discuss any inconsistencies with the decision and if necessary, make specific factual findings on whether the job numbers provided constitute significant numbers in the national economy. The [ALJ] will also be directed to take any further action to complete the administrative record; offer [Ms. Acosta] the opportunity for a hearing; and issue a new decision.

R. 1141.

The undersigned concludes that the ALJ did not deviate from the District Court's Remand Order. As discussed above, the ALJ on remand considered the supplemental vocational expert evidence on the other work in the national economy that Ms. Acosta could perform by recounting the VE's testimony regarding the photocopy machine operator, produce sorter, and private industry mail sorter jobs. *See* R. 1089–90. The ALJ further explained and reconciled the inconsistencies she identified between the vocational evidence and the DOT concerning how the jobs identified by the VE could constitute "Light Work," given Ms. Acosta's physical limitations on her right upper extremity and lifting, carrying, pushing, and pulling. (R. 1090).

Although the ALJ undertook no specific factual findings on whether the job numbers provided by the VE constitute significant numbers in the national economy, the ALJ concluded that there are occupations that exist in significant numbers in the national economy that Ms. Acosta can perform by relying on the VE's testimony. (R. 1089–90, 1130–34). It was not necessary for the ALJ to make specific factual findings on whether the job numbers provided by the VE constitute significant numbers in the national economy because, as discussed above, Ms. Acosta did not object to the VE's qualifications, did not ask the VE for supporting data related to job numbers, and did not present evidence contradicting the job numbers, including any data from the OEWS. *See, e.g.*, *Biestek*, 139 S. Ct. at 1155; *Valdez*, 808 F. App'x at 1010; *Pena*, 489 F. App'x at 402–03; *Leigh*, 496 F. App'x at 974–75, *Hurtado*, 425

28

F. App'x at 796–96. Further, the ALJ was only required to independently verify the VE's testimony "when there is a conflict between the VE's testimony and the DOT." *Webster*, 773 F. App'ex at 555. In other words, the ALJ properly relied on the VE's testimony and had no occasion to make those specific factual findings because the VE's testimony was unobjected to and unchallenged.

Accordingly, for the reasons stated above, the ALJ did not deviate from the District Court's Remand Order.

## VIII.   CONCLUSION AND RECOMMENDATION

For the reasons set forth above and based on the record before this Court, the undersigned finds that Ms. Acosta has failed to demonstrate that the ALJ's decision was not supported by substantial evidence or that the correct legal standards were not applied.

Accordingly, the undersigned respectfully recommends that the Decision of the Commissioner be **AFFIRMED**, that Plaintiff's Motion for Summary Judgment [ECF No. 11] be **DENIED**, and that Defendant's Motion for Summary Judgment [ECF No. 13] be **GRANTED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 2nd day of February 2024.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Beth Bloom, *U.S. District Judge*
Counsel of record