UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-21426-BLOOM/Damian

DORYS L ACOSTA,

    Plaintiff,

v.

MARTIN J. O'MALLEY,
Commissioner of Social Security,

    Defendant.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court upon two motions: Claimant Dorys L. Acosta's Motion for Summary Judgment, ECF No. [11] ("Claimant's Motion"), and Defendant Martin J. O'Malley,[1] Commissioner of the Social Security Administration's ("Commissioner") Motion for Summary Judgment, ECF No. [13] ("Commissioner's Motion"). The Commissioner filed a Response in Opposition to Claimant's Motion, ECF No. [14]. Claimant did not file a Response in Opposition to the Commissioner's Motion.

The Court referred both Motions to then-Magistrate Judge Melissa Damian on August 25, 2023.[2] *See* ECF No. [15]. On February 2, 2024, Judge Damian issued her Report and Recommendation ("R&R"), ECF No. [17], recommending that Claimant's Motion for Summary Judgment be denied, the Commissioner's Motion for Summary Judgment be granted, and the

---

[1] Martin J. O'Malley was appointed Commissioner of the Social Security Administration on December 20, 2023. Accordingly, Martin J. O'Malley is automatically substituted as the Defendant in this case. *See* Fed. R. Civ. P. 25(d).

[2] The United States Senate confirmed Judge Damian's appointment to serve as a United States District Judge for the Southern District of Florida on February 28, 2024.

Commissioner's decision be affirmed. Claimant filed Objections, ECF No. [18], to which the Commissioner filed a Response, ECF No. [22]. The Court has conducted a *de novo* review of the R&R and the Objections in accordance with 28 U.S.C. § 636(b)(1)(C). *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009). The Court has considered the Motions, the R&R, the Objections, the Response, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court overrules Claimant's Objections and adopts the R&R in full.

**I. BACKGROUND**

    **A. Procedural History**

The Court assumes the parties' familiarity with the facts of this case and adopts the procedural history contained in the R&R. Relevant here, this case was voluntarily remanded by the Commissioner to permit the Administrative Law Judge ("ALJ") to conduct further proceedings. ECF No. [17] at 3 (citing R. 1099).[3] The ALJ conducted a hearing upon remand on July 5, 2022 (the "Remand Hearing"). *Id.* at 3 (citing R. 1099). Stephanie Barnes, an impartial vocational expert ("VE"), testified at the Remand Hearing. The VE testified "a person with Ms. Acosta's same age, education, work experience, and residual functional capacity ('RFC') was unable to perform any of her past work as a fast-food worker, hand packager, ticketer/tagger, metal products fabricator, or warehouse worker." *Id.* at 5 (citing R. 1130).

When asked "whether other jobs exist in significant numbers in the national economy for a person with Ms. Acosta's age, education, work experience," the VE testified three representative occupations exist that such a person could perform: (1) photocopy machine operator, (2) produce sorter, and (3) private industry mail sorter. *Id.* at 5-6 (citing R. 1130-31). The VE testified 107,000,

---

[3] The Court adopts the R&R's convention of citing record entries in the underlying Social Security Administration ("SSA") proceeding as "R. 1".

109,000, and 142,000 of these jobs exist in the national economy, respectively, totaling 358,000 other jobs. *Id.* at 6. The ALJ relied on this testimony to conclude Claimant has not been disabled under Sections 216(i) and 223(d) of the Social Security Act from January 17, 2016, through December 31, 2020. *Id.* at 10-11 (citing 1089-90). As the R&R observes, "[c]ounsel for Ms. Acosta did not object to any part of the VE's testimony, including testimony about job numbers, nor did he challenge or question the foundation for the VE's testimony." *Id.* at 6 (citing R. 204-07).

### B. Motions

Claimant's Motion contends the ALJ's decision is not supported by substantial evidence. Claimant argues this is the case because (1) the VE grossly overstated the number of full-time photocopy machine operator, produce sorter, and private industry mail sorter jobs in the national economy, and (2) the ALJ failed to reconcile an apparent conflict between the RFC's reasoning level and the reasoning level required to perform a full-time private industry mail sorter job. The Commissioner's Motion and Response in Opposition argue the VE's testimony constitutes substantial evidence upon which the ALJ properly relied in concluding Claimant was not disabled. The Commissioner observes Claimant failed to challenge the VE's testimony and contends the Court should not consider new arguments or evidence that were not raised at the Remand Hearing. Regarding the apparent conflict between Claimant's RFC and the private industry mail sorter job, the Commissioner argues even if there is an apparent conflict, that error was harmless because significant numbers of photocopy machine operator and produce sorter jobs exist in the national economy.

### C. R&R

The R&R's analysis begins by applying the relevant legal standard governing eligibility for disability insurance benefits ("DIB") under the Social Security Act:

> Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1328c(a)(1)-(2). A claimant is disabled if she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C §§ 423(d)(1)(A), 1382c(a)(3)(A); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021). A plaintiff bears the burden of proving she is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c).

*Id.* at 11-12. As Judge Damian observes, the ALJ correctly applied "the five-step process that must be applied to determine whether a claimant is disabled[]" under Sections 216(i) and 223(d) of the Social Security Act. *Id.* at 12 (citing 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015)).

Step one requires the ALJ to determine "whether the claimant is unable to engage in substantial gainful activity ("SGA")." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015)). Step two requires the ALJ to determine "whether the claimant has a severe medically determinable mental or physical impairment ("MDI") or combination of impairments." *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Step three requires the ALJ to determine "whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525-26; §§ 416.920(d), 416.925-26). If the claimant's impairment or combination of impairments meets these criteria, the claimant is disabled. If it does not, the analysis proceeds to step four.

"Before considering step four, however, the ALJ must first determine the claimant's RFC[,]" which is defined as a claimant's "ability to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Id.* at 13 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e); 20 C.F.R. §§ 404.1545, 416.945). Step four then requires the ALJ to

4

"determine whether the claimant can perform her past relevant work, in light of her RFC." *Id.* (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)). Doing so requires establishing work "performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability[.]" *Id.* (citing 20 C.F.R. §§ 404.1560, 416.960). "If the claimant has the RFC to do her past relevant work, she is not disabled." *Id.* (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)). If the claimant cannot perform any past relevant work, the analysis proceeds to step five.

Step five temporarily shifts the burden to the Commissioner "to show the existence of other jobs in the national economy that exist in significant numbers that the claimant can perform, given her impairments." *Id.* (citing 20 C.F.R. §§ 404.1512, 404.1560(c), 416.912, and 416.960(c)). "The ALJ makes this determination by considering both the Dictionary of Occupational Titles ("DOT") and testimony from an impartial vocational expert." *Id.* (citing *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021)).

As noted in the R&R, the ALJ made the following findings with respect to steps one through three:

> (1) Ms. Acosta did not engage in SGA from January 17, 2016, though December 31, 2020, her date last insured; (2) during the period she was not gainfully employed, her "status post stab wound to the chest (costochondritis); asthma; type II diabetes mellitus without complications, hypertension, major depressive disorder, [and] posttraumatic stress disorder (PTSD)" were severe impairments; and (3) her combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404. (R. 1078–79).

*Id.* at 14.

Regarding Claimant's RFC, the ALJ found Claimant had the RFC to perform "light work" under 20 C.F.R Section 404.1567(b), with some exceptions.[4] *Id.* "As such, according to the ALJ,

---

[4] As detailed in the R&R, the ALJ specifically found Plaintiff can perform light work, "except that she can lift, carry, push, and pull 15 pounds occasionally and less than 10 pounds frequently; she can sit,

(4) Ms. Acosta was unable to perform her past relevant work, but (5) she can perform other jobs that exist in significant numbers in the national economy." *Id.* at 15 (citing R. 1089-1090). The ALJ accordingly concluded Claimant was not disabled under Sections 216(i) and 223(d) of the Social Security Act. *Id.*

Judge Damian begins her analysis of the ALJ's decision by correctly identifying the applicable legal standard:

> The Court's review of the ALJ's Decision is limited to determining whether the Decision is supported by substantial evidence and whether the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but less than a preponderance. *Id.* (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id.* A court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed de novo. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

*Id.* at 16.

### i. VE's Testimony

Judge Damian first addresses Claimant's argument that the ALJ's decision is not supported by substantial evidence because the VE grossly overstated the number of photocopy machine operator, produce sorter, and private industry mail sorter jobs in the national economy. For support, Claimant provides labor market data from the Department of Labor's Occupational Employment and Wage Statistics ("OEWS"), which reports considerably lower numbers of each job in the

---

stand, and/or walk with normal breaks for 6 hours in an 8-hour workday; she can occasionally reach overhead with the right dominant upper extremity and has no limitations with her left upper extremity; she should not work climbing ladders, ropes or scaffolds, she should not work at unprotected heights or operate dangerous machinery, she should avoid concentrated exposure to dust, odors, and gases, she should not work around heavy vibration or loud noise; she should avoid concentrated exposure to extreme cold; and she is unable to work in large settings, such as a retail mall." *Id.* at 14 (citing R. 1082).

national economy.[5] Claimant further supported her position by offering "an alternative method of calculating the number of jobs based on OEWS data (the 'Equal Distribution Method'): dividing the total number of jobs in the SOC group by the number of individual DOT occupations in the SOC group." ECF No. [17] at 18. As both the R&R and the Commissioner point out, "the record reflects that counsel for Ms. Acosta did not object to the VE's testimony or job number estimates during the Remand Hearing[,]" nor did she present this job data to the ALJ. *Id.* at 17-18. The Commissioner argues Claimant is thus "foreclosed from now challenging the VE's testimony regarding the numbers of photocopy machine operator, produce sorter, and private industry mail sorter jobs in the national economy before this Court because she did not object to or challenge the VE's testimony regarding this data during the hearing." *Id.* at 19.

The R&R agrees with the Commissioner. Judge Damian accurately observes "[t]he Eleventh Circuit has consistently held that it will not consider data on appeal from an ALJ's decision where the claimant did not object to the VE's testimony during the hearing." *Id.* at 20 (citing *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 675 (11th Cir. 2019); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020); Bacon v. Comm'r of Soc. Sec., 861 F. App'x 315, 320 (11th Cir. 2021)); *see also Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) (holding courts only consider evidence actually presented to the ALJ when determining whether the ALJ's decision is supported by substantial evidence on appeal). The R&R thus concludes the OEWS and Equal Distribution Method data should not be considered on appeal, as Claimant did not present that evidence to the ALJ or object to the ALJ's reliance on the VE's testimony.

---

[5] *See* ECF No. [17] at 18 ("For example, according to Ms. Acosta, the OEWS data shows that there are only 32,920 full-time and part-time jobs for the position of photocopy machine operator for the entire Standard Occupational Classification ("SOC") group.").

The R&R also rejects Claimant's related argument that the ALJ was required to independently investigate the labor market data discrepancy between the VE's testimony and the OEWS data. Claimant relies on *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1319 (11th Cir. 2021) and *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1285-86 (11th Cir. 2020) for support. In both cases, the Eleventh Circuit found remand was proper because the record indicated the VE's testimony regarding the number of available jobs was inconsistent or overstated, but the ALJ failed to investigate the discrepancy. *Viverette*, 13 F.4th at 1319; *Goode*, 966 F.3d at 1285-86. Claimant "also cites SSR 00-4p for the proposition that the ALJ had a duty to resolve the disparity between the VE's job number estimates and those presented by Ms. Acosta." ECF No. [17] at 19 (citing ECF No. [11] at 15-16).

As Judge Damian explains, *Viverette* and *Goode* are plainly distinguishable. The Eleventh Circuit found remand was warranted in *Viverette* based on the ALJ's failure to investigate job data discrepancies, but unlike here, "the claimant objected to the VE's testimony and raised challenges to the VE's methodology and data on cross-examination." *Id.* at 20-21 (citing *Viverette*, 13 F.4th at 1319). Further, in *Goode*, the Eleventh Circuit explicitly observed remand was appropriate to address the ALJ's failure to investigate inconsistencies with the VE's testimony because it was "not a case in which the claimant *failed to challenge or question* the [VE's] methodology or job numbers." 966 F.3d at 1284 n.3 (emphasis added). Unlike here, the claimant in *Goode* made several attempts stop challenge the VE's flawed testimony but was cut short by the ALJ. *Id.* Judge Damian accordingly found Claimant's reliance on these authorities is misplaced, as she "failed to object or raise any challenge to the VE's testimony in this case[.]" ECF No. [17] at 21.

The R&R is also unpersuaded by Claimant's reliance on the SSR 00-4p. "Pursuant to SSR 00-4p, the ALJ has an affirmative duty to identify and resolve apparent conflicts between the DOT,

8

which includes information about jobs classified by their exertional and skill requirements that exist in the national economy, and a VE's testimony." ECF No. [17] at 21 (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018)). Critically, however, "this affirmative duty to resolve conflicts does not extend to other sources outside the DOT." *Id.* As Judge Damian points out, this affirmative duty "does not require the ALJ to inquire *sua sponte* into the foundation for the VE's testimony concerning the number of relevant jobs in the national economy[,]" nor "does Ms. Acosta point to any case, regulation, or statute suggesting that the ALJ must *sua sponte* take administrative notice of economic data when the claimant did not raise an issue with job numbers during the hearing." *Id.*

Moreover, the Eleventh Circuit has explicitly held an ALJ is only required to verify a VE's testimony "when there is a conflict between the VE's testimony and the DOT." *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019). Like the claimant in *Webster*, Claimant for the first time argues the "conflict [here] is between the number of available jobs the VE reported and the number of available jobs shown in the figures provided by the Bureau of Labor Statistics through its publication of the [OEWS]." *Id.* at 556. As the Eleventh Circuit explains, "[u]nlike the situation in which the VE's testimony conflicts with the DOT, this Court has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the [OEWS]."[6] *Id.* The R&R accordingly relies on *Webster* to conclude the ALJ had no duty to independently investigate and resolve conflicts between the VE's testimony and the OEWS data.

Judge Damian also concludes the ALJ's decision that significant numbers of jobs Claimant could perform exist in the national economy is supported by substantial evidence. As discussed,

---

[6] The Eleventh Circuit also observed "the figures in the [OEWS] are not part of the SSA's regulatory scheme." *Webster*, 773 F. App'x at 556 (citing 20 C.F.R. § 404.1566(d)(1), (5)).

9

"the VE testified that there were approximately 107,000 full-time photocopy machine operator jobs, 109,000 full-time produce sorter jobs, and 142,000 private industry mail sorter jobs in the national economy, and the ALJ relied on and adopted these estimates in her Decision." ECF No. [17] at 23 (citing R. 1131-32). The R&R also finds "the ALJ properly relied on the VE's testimony in determining the jobs identified exist in significant numbers[]" because the ALJ was entitled to rely on the VE's testimony in making this determination, and because Claimant failed to challenge this determination. *Id.* Judge Damian notes the Eleventh Circuit similarly found "the ALJ was entitled to rely on a VE's testimony about the number of jobs available in the national economy because the claimant did not object to the VE's testimony, did not question the VE's qualifications, and did not present other occupational employment statistics to the ALJ" in *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005 (11th Cir. 2020).[7] *Id.* (citing *Valdez*, 808 F. App'x at 1010). Consistent with *Valdez*, Judge Damian finds "the ALJ was entitled to rely on the VE's testimony about the number of jobs available in the national economy given that Ms. Acosta presented no other evidence for the ALJ to consider and offered no reason for the ALJ to question the VE's evidence."[8] ECF No. [17] at 24 (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019) (observing that if a claimant does not demand the underlying evidence supporting a VE's testimony, the VE's "testimony may count as substantial evidence even when unaccompanied by supporting data") (additional citations omitted)).

---

[7] As the R&R accurately observes, *Valdez* also found the claimant's failure to object foreclosed consideration of OEWS data on appeal. 808 F. App'x at 1010.

[8] Judge Damian also suggests that "under Eleventh Circuit precedent, even the numbers produced by the OEWS and Ms. Acosta's Equal Distribution Method would likely satisfy the Commissioner's burden of identifying a significant number of jobs in the national economy." (citing *Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987); *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 935 (11th Cir. 2015)).

The R&R accordingly finds the ALJ properly relied on the VE's testimony, and the VE's testimony regarding whether significant jobs that Claimant can perform exist in the national economy constitutes substantial evidence supporting the ALJ's decision. ECF No. [17] at 25.

### ii. Apparent Conflict

Judge Damian then considers Claimant's argument that the ALJ's decision is not supported by substantial evidence because the ALJ failed to reconcile an apparent conflict between Claimant's RFC and the private industry mail sorter job. Claimant contends the reasoning level required for this job exceeds the reasoning level in her RFC, a conflict that the ALJ failed to identify, let alone reconcile. The Commissioner argues the ALJ's decision should be affirmed because even if the 142,000 private industry mail sorter jobs are discounted due to an apparent conflict, "216,000 of the 358,000 identified jobs remain, which, in any event, constitutes substantial evidence upon which the ALJ properly relied." ECF No. [17] at 25. In short, the Commissioner contends any such error was harmless.

Judge Damian agrees that even if the ALJ failed to recognize this apparent conflict, this error was harmless. The R&R accurately observes "[a]n ALJ's errors may be harmless if they do not prejudice the claimant." *Id.* at 26 (citing *Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012)). The R&R found *Valdez* and *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671 (11th Cir. 2019) support finding that any failure to resolve this apparent conflict was harmless. In *Valdez*, the Eleventh Circuit affirmed the ALJ's decision where the claimant argued his RFC's reasoning level conflicted with one occupation, but not with the remaining identified occupations. 808 F. App'x at 1009. The Eleventh Circuit concluded "any error pertaining to the ALJ's conclusion that [the claimant] could work as an order clerk is harmless because there are other jobs he is qualified to do even in light of his [RFC], age, education, and work experience." *Id. Wooten* similarly found that even if an ALJ erred by failing to identify a conflict between the claimant's

11

RFC reasoning level and the reasoning level required for an occupation, that error was harmless. 787 F. App'x at 674. Consistent with *Valdez*, the Eleventh Circuit concluded the claimant could perform another identified occupation, which the claimant did not allege was inconsistent with her RFC. *Id.*

Consistent with *Valdez* and *Wooten*, the R&R concludes any failure to reconcile apparent conflict between the reasoning level in Claimant's RFC and required reasoning level for the private industry mail sorter job constitutes harmless error. The R&R notes Claimant does not challenge her ability to perform the other two jobs. Further, Judge Damian's conclusion that the Court is foreclosed from considering Claimant's job data establishes 216,000 identified jobs remain even if the private industry mail sorter jobs are discounted. It therefore "follows that the ALJ's Decision is supported by substantial evidence even if the private mail sorter job is removed as a basis for the Decision." ECF No. [17] at 27. Judge Damian accordingly concluded "any error pertaining to the ALJ's conclusion that Ms. Acosta can work as a private industry mail sorter is harmless because there are other jobs she is qualified to do that exist in significant numbers in the national economy." *Id.* (citing *Valdez*, 808 F. App'x at 1009; *Wooten*, 787 F. App'x at 674).

Judge Damian therefore concludes the VE's testimony constitutes substantial evidence.[9] The R&R accordingly recommends the Court deny Claimant's Motion, grant the Commissioner's Motion, and affirm the Commissioner's decision.

### D. Objections

Claimant objects the R&R errs by finding (1) the ALJ's decision is supported by substantial evidence because the ALJ properly relied on the VE's testimony; and (2) any failure by the ALJ to reconcile an apparent conflict between Claimant's RFC and the private industry mail sorter job

---

[9] The R&R also finds the ALJ complied with the court's remand instructions. *See* ECF No. [17] at 27-28.

was harmless. Regarding job data, Claimant contends the R&R errs in concluding the Court is foreclosed from considering Claimant's OEWS data on appeal. Claimant argues the OEWS data is part of the record in this case, the ALJ had an independent duty to evaluate this data, and that this job data demonstrates the ALJ's decision was not supported by substantial evidence. Regarding the ALJ's failure to reconcile an apparent conflict, Claimant contends the ALJ did err, and that this error establishes the ALJ's decision should either be reversed or remanded for further proceedings. The Commissioner responds by observing Claimant "is essentially restating her arguments about the VE's job numbers from her primary brief[.]" ECF No. [22] at 2. On the merits, the Commissioner argues the R&R accurately concludes the Court is foreclosed from considering Claimant's job data on appeal, the ALJ's properly relied on the VE's testimony, and any error based on the ALJ's failure to reconcile an apparent conflict was harmless.

## II. LEGAL STANDARD

"In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)) (alterations omitted). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the report and recommendation to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001).

Furthermore, "[i]t is improper for an objecting party to ... submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to an R & R." *Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1).

**III. DISCUSSION**

Claimant does not argue the ALJ applied the incorrect legal standard. As discussed, Claimant objects the R&R errs by concluding the ALJ's decision is supported by substantial evidence because (1) Claimant's OEWS job data establishes the ALJ improperly relied on the VE's testimony; and (2) the ALJ failed to recognize an apparent conflict between Claimant's RFC reasoning level and the reasoning required for private industry mail sorter jobs. The Court notes at the outset that both objections amount to little more "a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2. The Court nonetheless addresses both objections below.

    i.   **VE's Testimony**

Claimant contends the R&R errs in concluding the ALJ's decision is supported by substantial evidence because (1) Claimant is not "precluded" from raising the issue of the VE's testimony because she failed to object to the VE's testimony at the Remand Hearing; (2) the OEWS data is part of the record in this case; and (3) the ALJ had a duty to independently verify the VE's testimony and failed to do so.

As a threshold matter, Claimant is incorrect that Judge Damian found Claimant is precluded from raising the issue of the VE's testimony. The R&R instead accurately observes

14

"[t]he Eleventh Circuit has consistently held that it will not consider data on appeal from an ALJ's decision where the claimant did not object to the VE's testimony during the hearing." *Id.* at 20 (citing *Wooten*, 787 F. App'x 671, 675 (11th Cir. 2019); *Valdez*, 808 F. App'x 1005, 1009 (11th Cir. 2020); *Bacon*, 861 F. App'x at 320). Consistent with this guidance, Judge Damian found the Court is foreclosed from considering the OEWS data because Claimant failed to object to the VE's testimony at the Remand Hearing. But this conclusion does not mean Claimant is *precluded* from raising the issue, or that Claimant failed to preserve the issue. The Court is accordingly unpersuaded by Claimant's reliance on the Supreme Court's holding in *Sims v. Apfel* that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." 530 U.S. 103, 112. Although Claimant is free to *raise* the issue of the VE's testimony, she cannot establish that testimony is unreliable by presenting new job data after failing to object to the testimony at the Remand Hearing. Claimant's reliance on *Sims* is thus misplaced.

Moreover, the Court agrees with Judge Damian's conclusion that Claimant is foreclosed from presenting OEWS data, including data derived from the Equal Distribution Method. As noted above, this conclusion is consistent with controlling Eleventh Circuit precedent. Claimant observes the R&R "does not specifically address Acosta's assertion that the ALJ had complete access to public data from the Department of Labor, as well as additional information and tools through SSA's own Digital Library[.]" ECF No. [18] at 3. However, the R&R explains Claimant fails to "point to any case, regulation, or statute suggesting that the ALJ must *sua sponte* take administrative notice of economic data when the claimant did not raise an issue with job numbers during the hearing." ECF No. [17] at 21. Judge Damian thus had no need to address additional sources of job data the ALJ had no duty to evaluate or take notice.

15

Claimant contends this conclusion is erroneous because SSA regulations require the ALJ to take administrative notice of the OEWS data. *See* 20 C.F.R. § 404.1566(d) ("When we determine that unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers either in the region where you live or in several regions of the country), *we will take administrative notice* of reliable job information available from various governmental and other publications.") (emphasis added). Claimant reiterates the ALJ had access to the OEWS data through the SSAs Digital Library. *See generally* Emergency Message EM-21065, https://secure.ssa.gov/apps10/reference.nsf/links/10292021113305AM (last visited May 15, 2023). Taken together, Claimant argues these sources demonstrate the ALJ "not only had ready access to the OEWS information, but that she was also required to administrative notice of it." ECF No. [18] at 4. Claimant also argues Judge Damian's reliance on *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) is misplaced, as "the data contained in the OEWS is not new evidence being presented to this court for the first time." *Id.* The Commissioner responds "the ALJ's ability to access information does not make it part of the record in her case[,]" and observes Claimant lacks authority supporting this position. ECF No. [22] at 3.

The Court is unpersuaded by Claimant's reliance on § 404.1566(d) and the SSA Digital Library. As the Commissioner observes, Claimant lacks support for her position that the OEWS data is properly considered part of the record because the ALJ had access to it through the SSA Digital Library. Claimant observes § 404.1566(d) provides ALJs "will take administrative notice of reliable job information available from various governmental and other publications." As the R&R observes, however, this regulation fails to establish the ALJ must *sua sponte* take notice of any reliable job data where, as here, the claimant fails to challenge the job data during the hearing.

As discussed, the ALJ concluded occupations Claimant could perform existed in significant numbers in the national economy "by relying solely on the VE's testimony that there were 107,000, 109,000, and 142,000 jobs in the national economy for the three identified occupations." ECF No. [17] at 11 (citing R. 1089-90). The ALJ therefore did not take judicial notice of any other job information. Concluding the OEWS data is part of the record in this case is thus particularly inappropriate, as the ALJ did not take judicial notice of this or any other job data. Moreover, concluding § 404.1566(d) demonstrates the OEWS data is part of the record is inconsistent with the Eleventh Circuit's observation that "this [c]ourt has not placed an affirmative duty on the ALJ to independently investigate a conflict *between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics* in the [OEWS]."[10] *Webster*, 773 F. App'x at 556. The Court is accordingly unpersuaded by Claimant's reliance § 404.1566(d) and the SSA Digital Library. Neither demonstrates the OEWS data is part of the record on appeal, and the ALJ had no duty to *sua sponte* investigate conflicts between the VE's testimony and the OEWS data.

The Court is accordingly unpersuaded that the R&R erred by concluding that the ALJ properly relied on the VE's testimony.

---

[10] Claimant argues the Court should disregard *Webster* because "the *Webster* court made a critical oversight when it stated that "the figures in the [OEWS] are not part of the SSA's regulatory scheme." ECF No. [18] at 5 (quoting *Webster*, 773 F. App'x at 556). For support, Plaintiff notes § 404.1566(d) provides a non-exhaustive list of reliable sources of job information and reiterates this provision explains ALJs "will take administrative notice of reliable job information[.]" The Court is unpersuaded *Webster* erred on this point. The fact that this list is non-exhaustive fails to show the OEWS data is properly considered part of the SSA's regulatory scheme. Even assuming the OEWS *is* part of the SSA's regulatory scheme, this conclusion does not disturb the Eleventh Circuit's holding that an ALJ is only "required to independently verify a VE's testimony ... when there is a conflict between the VE's testimony *and the DOT*." *Webster*, 773 F. App'x at 555 (quoting *Washington v. Comm'r Soc. Sec.*, 906 F.3d 1353, 1365 (11th Cir. 2018). Nor does it undermine the Eleventh Circuit's decision *not* to "place[] an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the [OEWS]." *Id.* at 556. Claimant's objection that the ALJ had a duty to independently verify the OEWS data is accordingly foreclosed by *Webster*.

### ii. Apparent Conflict

Claimant also objects to the R&R's conclusion that even if the ALJ erred by failing to resolve an apparent conflict between the reasoning level in Claimant's RFC and the reasoning ability required to perform a private industry mail sorter job, any such error was harmless. Claimant contends the R&R "does not address Acosta's argument that the Reasoning Level requirements of the Mail Clerk job exceed Acosta's RFC[.]" ECF No. [18] at 6. Judge Damian did address this argument, however. As discussed, the R&R concluded "any error pertaining to the ALJ's conclusion that Ms. Acosta can work as a private industry mail sorter is harmless because there are other jobs she is qualified to do that exist in significant numbers in the national economy." ECF No. [17] at 27 (citing *Valdez*, 808 F. App'x at 1009; *Wooten*, 787 F. App'x at 674). The R&R accordingly did not err by failing to determine whether the ALJ in fact erred by failing to reconcile any such conflict.

Furthermore, the Court agrees with the R&R's conclusion that even if the ALJ failed to reconcile an apparent discrepancy between Claimant's RFC and the private industry mail sorter job, any such error was harmless. Judge Damian observed that even if the 142,000 private industry mail sorter jobs are discounted, the VE nonetheless identified a total of 216,000 photocopy machine operator jobs and produce sorter jobs. *Id.* The R&R also observes Claimant does not argue any apparent conflict exists with respect to those jobs. Consistent with *Valdez* and *Wooten*, Judge Damian accordingly concluded the record establishes the 216,000 remaining jobs constitute substantial evidence supporting the ALJ's decision. Claimant does not address these authorities.

Instead, Claimant cites *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309 (11th Cir. 2021) for the proposition that "[w]here additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition." *Id.* at 1318 (citing *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)). As discussed above, the Eleventh Circuit found remand was warranted in

18

Case No. 23-cv-21426-BLOOM/Damian

*Viverette* based on the ALJ's failure to investigate job data discrepancies. 13 F.4th at 1319. While doing so, the court noted it was persuaded by the Tenth Circuit's observation that "[i]t is not for this court to decide, in the first instance, whether a *relatively low number* qualifies as a 'significant number' of jobs.'" *Id.* (quoting *Kimes v. Comm'r of Soc. Sec.*, 817 F. App'x 654, 659 (10th Cir. 2020) (emphasis added)). *Viverette* fails to support remand in this context, however. Unlike in *Viverette*, the Court need not decide whether a relatively low number of jobs constitutes a significant number of jobs. The ALJ in *Viverette* testified there were 125,000 other jobs in the national economy. *Id.* However, the ALJ failed to consider "an apparent conflict that affected 104,000 of those jobs." *Id.* The Eleventh Circuit therefore found remand was appropriate "[g]iven that over eighty percent of the jobs presented to the ALJ are affected by the apparent conflict[.]" *Id.* Here, 216,000 other jobs remain even if the 142,000 private industry mail sorter jobs are discounted. Remand is therefore unwarranted, as the record demonstrates the ALJ's decision is supported by substantial evidence even if those jobs are discounted.[11]

The Court is accordingly unpersuaded by Claimant's Objection. As Judge Damian accurately observes, the Eleventh Circuit has found far less than 216,000 available jobs satisfy the Commissioner's burden to identify a significant number of jobs in the national economy. *See, e.g.*, *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 935 (11th Cir. 2015) (finding 23,800 jobs nationally significant); *Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (affirming "ALJ's finding that 840 polisher, document preparer, and bonder jobs constituted a significant

---

[11] Claimant also takes issue with Judge Damian's suggestion that "the numbers produced by the OEWS and Ms. Acosta's Equal Distribution Method would likely satisfy the Commissioner's burden of identifying a significant number of jobs in the national economy." ECF No. [17] at 25 n.6 (citations omitted). As the Commissioner observes, however, this argument is irrelevant in light of the R&R's conclusion that the ALJ properly relied on the job data provided by the VE's testimony. As discussed, the Court agrees with and adopts this conclusion. Claimant's objection therefore fails to show the R&R erred.

number in the national economy"). The Court therefore agrees that any such error was harmless and adopts this finding in full.

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The R&R, **ECF No. [17]**, is **ADOPTED**.

2. Claimant's Motion for Summary Judgment, **ECF No. [11]**, is **DENIED**.

3. The Commissioner's Motion for Summary Judgment, **ECF No. [13]**, is **GRANTED**.

4. Claimant's Objections, **ECF No. [18]**, are **OVERRULED**.

5. The Commissioner's decision is **AFFIRMED**.

6. The Clerk of Court shall **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 10, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record